# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA K. GENTRY, Individually, | : | |
| And as Executrix of the Estate of | : | |
| TROY LEE GENTRY, Deceased, | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| SIKORSKY AIRCRAFT CORPORATION | : | |
| et al., | : | **No. 18-1326** |
| *Defendants.* | : | |

## AMENDED MEMORANDUM

PRATTER, J.                                                                                      APRIL 22, 2019

Following a helicopter crash that killed her husband, Angela Gentry initiated this lawsuit in Pennsylvania state court against a handful of companies that were allegedly responsible for the helicopter's defects. The defendants removed the case to federal court, and Ms. Gentry now seeks to remand.

Although Ms. Gentry has sought to cast a wide net in developing the record on this Motion to Remand, the primary issues before the Court are narrow: (1) whether the Court has subject matter jurisdiction, and (2) whether the case was properly removed from state court. There is some confusion among the parties, however, about how the Court determines the defendants' citizenship—which is a necessary component of the Court's jurisdiction and removal analysis.

The test for ascertaining corporate citizenship is set forth in the Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Under *Hertz*, a corporation is a citizen of both (1) its state of incorporation, and (2) the state where the company keeps its "nerve center," i.e., the *sole* location where the corporation's high-level officers direct, control, and coordinate the corporation's activities. Ms. Gentry focuses her citizenship analysis on each defendant's corporate

1

activities *with respect to this action*. That approach misreads *Hertz*, conducting an analysis more akin to *specific personal jurisdiction*, which requires that a suit arise out of or relate to a defendant's contacts with the forum. *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017).

As set forth in this Memorandum, after a proper application of *Hertz*, the Court concludes that it has diversity subject matter jurisdiction over this case and that removal was properly executed. The Motion to Remand is therefore denied. Separately, the Court also grants the defendants' Motion to Strike an attorney affidavit included in Ms. Gentry's Supplement in Support of the Motion to Remand.

## BACKGROUND

On September 8, 2017, Troy Lee Gentry, one half of the popular country music duo Montgomery Gentry, was killed in a helicopter crash at Flying W Airport in New Jersey. The crash occurred after the aircraft's throttle cable jammed, resulting in engine failure. Although the pilot attempted a maneuver that could have allowed the helicopter to land safely, various mechanical issues undermined the emergency landing. All onboard died in the crash.

No doubt unbeknownst to Mr. Gentry, about a year prior to the crash, the throttle cable in that particular helicopter—a Schweitzer Model 269C—had broken. The replacement parts were not directly available from the manufacturer, and so the owner of the at-issue helicopter (who is not a party to this action) contracted with a third-party (also not a party to this action) to manufacture a replacement throttle cable. The helicopter involved in the accident operated normally between November 2016 and September 2017, up until the crash that killed Mr. Gentry.

After her husband's death, Angela Gentry sued the following entities or company names:

2

## I. "Sikorsky Aircraft Corporation"

**Sikorsky Aircraft Corporation** designs and manufactures helicopters and other aircrafts, including the at-issue model, the Model 269.[1] The complaint alleges that Sikorsky Aircraft Corporation is incorporated in Connecticut and has its principal place of business in Pennsylvania. The defendants dispute both of these allegations and have submitted affidavits and evidence showing that Sikorsky Aircraft Corporation is incorporated in Delaware and has its principal place of business and corporate headquarters in Connecticut. According to Ms. Gentry, Sikorsky Aircraft Corporation engages in manufacturing operations in Pennsylvania, including operations relevant to the Model 269 helicopter.

## II. "Keystone Helicopter Corporation," "Sikorsky Global Helicopters, Inc.," and "Keystone Helicopter Corporation (n/k/a Sikorsky Global Helicopters, Inc.)"

**Keystone Helicopter Corporation** was incorporated in Pennsylvania on July 31, 1961. On October 3, 2011, Keystone Helicopter Corporation changed its name, via articles of amendment, to **Sikorsky Global Helicopters, Inc.** On January 1, 2015, Sikorsky Global Helicopters, Inc. merged with Helicopter Support, Inc.[2] Helicopter Support, Inc. was the surviving entity; it is incorporated in Connecticut and has its principal place of business in Connecticut. After the merger, Helicopter Support, Inc. registered the fictitious name "Sikorsky Global

---

[1]    The actual Model 269 helicopter that crashed was produced by Schweitzer Helicopter Corporation in 2000. Sometime between 2000 and 2017, Schweitzer sold the entire Model 269 product line to Sikorsky Aircraft Corporation. Since then, Sikorsky Aircraft Corporation has had "sole airworthiness responsibility for the Model 269" helicopter and its component parts. Compl. ¶ 21.

[2]    Helicopter Support, Inc. is not named as a defendant in the complaint. However, because the complaint does name several entities that would either eventually merge into or are otherwise related to Helicopter Support, Inc., the Court discusses Helicopter Support, Inc.'s citizenship below.

Helicopters, Inc." in Pennsylvania, pursuant to the Pennsylvania Fictitious Names Act, 54 Pa.C.S.A. § 301.[3]

## III. "Keystone Helicopter Holdings, Inc." and "Keystone Helicopter Holdings, Inc., A Lockheed Martin Company"

The complaint alleges that **Keystone Helicopter Holdings, Inc.** is a Pennsylvania corporation with its principal place of business in Pennsylvania. But the defendants assert—and submit evidence showing—that Keystone Helicopter Holdings, Inc. is a holding company incorporated in Delaware with its principal place of business in Connecticut. Keystone Helicopter Holdings, Inc filed a "foreign registration statement" with the Pennsylvania Department of State, which allows the company to do business in Pennsylvania. According to the defendants, Keystone Helicopter Holdings, Inc.'s sole purpose is to hold other companies. It is not an operating company and instead allegedly owns all or a portion of three other companies. It is not clear from the record what companies Keystone Helicopter Holdings, Inc. owns.

According to the complaint, **Keystone Helicopter Holdings, Inc., A Lockheed Martin Company** is a Pennsylvania corporation with its principal place of business in Pennsylvania. But the record shows that Keystone Helicopter Holdings, Inc. registered the fictitious name "Keystone Helicopter Holdings, Inc., A Lockheed Martin Company" in Pennsylvania, pursuant to the Pennsylvania Fictitious Names Act, 54 Pa.C.S.A § 301.

---

[3]     **"Keystone Helicopter Corporation (n/k/a Sikorsky Global Helicopters, Inc.)"** does not appear to have any separate corporate existence from Keystone Helicopter Corporation and Sikorsky Global Helicopters, Inc. To attempt to establish the existence of "Keystone Helicopter Corporation (n/k/a Sikorsky Global Helicopters, Inc.)," Ms. Gentry cites to a March 8, 2018 internet "search" for the "Business Entity Details" of Sikorsky Global Helicopters, Inc., as identified on the Pennsylvania Department of State website. *See* Mot. to Remand, Ex. E (Sikorsky Global Helicopters, Inc. Business Entity Details Print Screen). But the "search" only shows that "Keystone Helicopter Corporation" was a "*prior* name," and the company's "*current* name," at the time of its merger, was "Sikorsky Global Helicopters, Inc." *Id.* (emphasis added). The document also reflects the company's "status" as "merged." *Id.*

4

## PROCEDURAL HISTORY

On March 29, 2018, the defendants removed this case to federal court pursuant to the Court's diversity and federal question jurisdiction.[4] Ms. Gentry timely moved to remand. On November 9, 2018, months after the close of briefing on the Motion to Remand, Ms. Gentry moved for leave to file two sur-reply submissions in support of the remand motion.[5] After the defendants filed a brief in opposition, the Court denied Ms. Gentry's motion for leave and struck the sur-reply submissions from the record, holding that the materials were untimely and, in any event, did not respond to a new argument (as is required of sur-replies).

The Court held oral argument on the Motion to Remand on December 13, 2018. After argument, the Court directed the parties to prepare proposals for limited jurisdictional discovery, to assist the Court in determining the principal place of business, i.e., nerve center, of Sikorsky Aircraft Corporation. The parties submitted competing letters, and the Court ordered Ms. Gentry to select one of two limited approaches to jurisdictional discovery, each of which focused specifically on Sikorsky Aircraft Corporation's nerve center—as per the Court's instructions

---

[4]      This case was initially assigned to former Eastern District of Pennsylvania Chief Judge Lawrence Stengel. Prior to Chief Judge Stengel's retirement, the case was reassigned on July 17, 2018. *See* Doc. No. 11.

[5]      On November 1, 2018, Ms. Gentry filed, without leave of the Court, a *new* brief and two *new* exhibits in support of the Motion to Remand. Doc. No. 14. The brief principally described the exhibits and how they relate to the motion. The first exhibit, Exhibit O, included the declaration of attorney Jacklyn Fetbroyt, describing the corporate structures and interrelationships of the defendants, as well as materials supporting Ms. Fetbroyt's declaration. The second exhibit, Exhibit P, contained photocopies of business cards from various individuals who participated in the investigation of the helicopter crash. After the defendants filed a letter with the Court arguing that the new brief and exhibits were filed improperly, Ms. Gentry sought leave from the Court to file the materials.

5

during oral argument.[6]  Ms. Gentry moved to substantially expand the scope of jurisdictional discovery, but the Court denied Ms. Gentry's request.  The Court ordered the parties to conduct jurisdictional discovery within the previously defined parameters and, upon the completion of jurisdictional discovery, to file "any supplemental briefing regarding the results of jurisdictional discovery."  Doc. No. 30.

After completing jurisdictional discovery, the parties each submitted a supplement to the Motion to Remand briefing.  In addition to describing and attaching materials resulting from jurisdictional discovery, Ms. Gentry's supplement also included Jacklyn Fetbroyt's declaration,

---

[6]     The Order provided the following instructions:

"By no later than January 14, 2019, Plaintiff Angela Gentry shall select, and submit to the Court a letter confirming said selection of, **one** of the following two methods for conducting jurisdictional discovery:

a.  Defendant Sikorsky Aircraft Corporation shall designate and provide a knowledgeable officer, director, or managing agent to testify on its behalf, as contemplated by Federal Rule of Civil Procedure 30(b)(6), for a video deposition, to be taken by counsel for Plaintiff for up to six (6) hours.  The scope of this deposition shall only be the determination and documentation of the citizenship of Sikorsky Aircraft Corporation by way of locating its "nerve center," i.e., Sikorsky Aircraft Corporation's "actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010); **or**

b.  Defendant Sikorsky Aircraft Corporation shall respond to 15 interrogatories, including sub-parts and including the identification of pertinent documents, submitted by counsel for Plaintiff.  The scope of these interrogatories shall only be the determination and documentation of the citizenship of Sikorsky Aircraft Corporation by way of locating its "nerve center," i.e., Sikorsky Aircraft Corporation's "actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).  In addition, Defendant Sikorsky Aircraft Corporation shall designate and provide a knowledgeable officer, director, or managing agent to testify on its behalf, as contemplated by Federal Rule of Civil Procedure 30(b)(6), for a video deposition, to be taken by counsel for Plaintiff for up to three (3) hours.  The scope of this deposition shall be identical to the scope of the interrogatories."

Doc. No. 26 (footnotes omitted).

which the Court had previously stricken from the record as part of Ms. Gentry's untimely sur-reply submissions.[7] The defendants again moved to strike the Fetbroyt Declaration from the record.

That Motion to Strike and Ms. Gentry's Motion to Remand have been fully briefed and are ripe for decision.

## DISCUSSION

Ms. Gentry seeks remand, arguing that (1) removal was defective and (2) the Court lacks subject matter jurisdiction. Ms. Gentry also seeks costs, attorneys' fees, and expenses for the defendants' allegedly improper removal. For their part, the defendants contend that removal was proper, because the Court has subject matter jurisdiction (under either a diversity or federal question theory), all properly named defendants consented to removal, and there are no properly named "forum defendants." The defendants also seek to strike an affidavit submitted in support of Ms. Gentry's supplemental brief regarding jurisdictional discovery.

First, the Court will address the defendants' Motion to Strike. Second, the Court will analyze the citizenship of the defendants, which is a prerequisite for determining whether the Court has diversity subject matter jurisdiction and whether removal was proper. Third, the Court will determine whether it has subject matter jurisdiction. And fourth, the Court will address whether removal was proper, i.e., whether the properly named defendants unanimously consented to removal and whether any properly named defendant violates the forum defendant rule.

Because the Court concludes that removal was proper and there is diversity subject matter jurisdiction, the Motion to Remand is denied. The Court also grants the defendants' Motion to Strike.

---

[7]     *See supra* n.5; *compare* Supp. in Support of Mot. to Remand, Ex. H (Fetbroyt Decl.) *with* Doc. Nos. 14, 19 (sur-reply submissions, including Fetbroyt Decl.); *cf.* Doc. Nos. 22, 23 (Order and Memorandum denying leave to file sur-reply and striking sur-reply materials).

7

## I.    The Defendants' Motion to Strike

Even though the Court previously struck attorney Jacklyn Fetbroyt's declaration from the record as part of an untimely and improperly filed sur-reply submission, Ms. Gentry included the declaration again as part of her post-jurisdictional discovery supplemental briefing.    The defendants seek to strike the Fetbroyt Declaration again, this time as being beyond the scope of jurisdictional discovery.  The Court will grant the Motion to Strike.

The Fetbroyt Declaration was inappropriately included in Ms. Gentry's post-jurisdictional discovery submission.  The Court's January 8, 2019 Order regarding jurisdictional discovery explicitly set forth the restricted parameters for jurisdictional discovery, limiting the effort to "the determination and documentation of the citizenship of Sikorsky Aircraft Corporation by way of locating its 'nerve center,' i.e., Sikorsky Aircraft Corporation's 'actual center of direction, control, and coordination.' *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010)." Doc. No. 26; *see supra* n.6. And, in the Court's Order denying Ms. Gentry's request to expand jurisdictional discovery, the Court defined the scope of any supplemental briefing that the parties might file after finishing jurisdictional discovery: "[T]he parties shall file by February 25, 2019 any supplemental briefing *regarding the results of jurisdictional discovery.*  Further briefing on this issue may only be permitted by and at the request of the Court." Doc. No. 30 (emphasis added).  Therefore, Ms. Gentry is at best incorrect when she argues that "[t]his Court gave no restrictions on the type evidence that could be submitted in further support of remand." Opp. to Motion to Strike at p. 1.

The Fetbroyt Declaration was not the result of jurisdictional discovery on the limited subject of Sikorsky Aircraft Corporation's nerve center.  Rather, it was sworn (and originally submitted to the Court) months *before* the Court even ordered jurisdictional discovery.  *See* Supp. in Support of Mot. to Remand, Ex. H at p. 9 (Fetbroyt Dec.) (showing declaration was dated

8

October 30, 2018). Simply reading the declaration demonstrates that it discusses at length the places of business of entities *other than* Sikorsky Aircraft Corporation, putting its contents well beyond the narrow scope of jurisdictional discovery. Ms. Gentry's attempt to surreptitiously include the Fetbroyt Declaration in the record—after the Court already rejected her first try at submitting the declaration as untimely and procedurally out of line—is, to be generous, improper. The Motion to Strike is granted, such that the Fetbroyt Declaration, all references to it, and any reliance on it, is stricken.

## II.    Determining Corporate Citizenship

A defendant's citizenship bears on the propriety of removal and the Court's subject matter jurisdiction only in certain circumstances. As is relevant here, in scrutinizing removal and jurisdiction, courts must assess the citizenship of "real and substantial parties to the controversy," and need not determine the citizenship of "nominal or formal parties[.]" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358 (3d Cir. 2013) (citations and quotations omitted).[8]  The removing party has the burden of persuasion to prove that a party is nominal. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (stating that it is the defendant's burden to establish that a party is nominal).[9]

---

[8]    *See also Balazik v. Cty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) ("The unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party[.]") (citations omitted); *Yakitori Boy, Inc. v. Starr Indem. & Liab., Co.*, No. 18-4094, 2019 WL 199904, at *5 (E.D. Pa. Jan. 14, 2019) (holding that defendant "is a nominal party and his citizenship status should not affect this Court's exercise of diversity jurisdiction, nor should it affect removal under 28 U.S.C. § 1441(b)").

[9]    In addition to arguing that several of the defendants are nominal parties, the defendants also assert that removal was proper because several defendants were fraudulently joined.

"[J]oinder is fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). Additionally, a line of cases, to which the Third Circuit Court of Appeals and this

To determine the citizenship of a corporation, whether for purposes of diversity under §

1332 or for removal under § 1441(b), courts use the familiar test announced by the Supreme Court

in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).[10] Under *Hertz*, a corporation is a citizen of its state

of incorporation and its principal place of business, i.e., its "nerve center." *Id.* at 80–81. A nerve

center is "the place where the corporation's high level officers direct, control, and coordinate the

corporation's activities," which is typically "found at a corporation's headquarters." *Id.* A

corporation's nerve center "is a single place," *id.* at 93, meaning a corporation's nerve center is

*static*, regardless of the conduct at issue in a particular case.

Ms. Gentry, in her Motion to Remand, misinterprets the *Hertz* test. She argues at length

that "removal is improper because the Sikorsky defendants' nerve center *with respect to this series

of helicopters* is in Pennsylvania." Mot. to Remand at 13–14 (emphasis added) (cleaned up); *see*

---

Court have cited approvingly, indicates that joinder may be fraudulent where a defendant can prove
that "plaintiffs have falsely alleged [the defendants'] Pennsylvania citizenship" creating "'outright
fraud in the plaintiff's pleadings of jurisdictional facts.'" *Id.* (quoting *B., Inc. v. Miller Brewing
Co.*, 663 F.2d 545, 549 (5th Cir. 1981)); *see also Pennsylvania Employees Benefit Tr. Fund v. Eli
Lilly & Co.*, No. 07-2057, 2007 WL 2916195, at *6 n.10 (E.D. Pa. Oct. 5, 2007) ("As the Court of
Appeals for the Fifth Circuit has held, and the Third Circuit Court of Appeals has
acknowledged, joinder of a defendant is also fraudulent where there is 'outright fraud in the
plaintiff's pleadings of jurisdictional facts.'") (quoting *Miller Brewing Co.*, 663 F.2d at 549).

The Court need not conduct any fraudulent joinder analysis here because the non-nominal
defendants complied with the requirements for removal and satisfy the components of diversity
subject matter jurisdiction. Although the Court does not decide the issue, however, it notes that
Ms. Gentry's complaint inaccurately describes the places of incorporation of multiple defendants,
facts that are easily ascertained via public filings. *See infra* at pp. 17, 19–22. At times, Ms.
Gentry's jurisdictional allegations are inconsistent with even the evidence included in the exhibits
she attached to her Motion to Remand. *See id.*

[10]     *Hertz* applies when determining the citizenship of a corporation for diversity jurisdiction
purposes, *see* 559 U.S. at 80–81, as well as when determining the citizenship of a corporation for
removal purposes. *See Monroe v. SmithKline Beecham Corp.*, No. 10-02140, 2010 WL 2606682,
at *2 (E.D. Pa. June 25, 2010) (applying *Hertz* "to decide whether [the defendant] has violated §
1441(b)'s prohibition against removal from the state court in which a defendant is a citizen");
*Lewis v. Lycoming*, No. 11-6475, 2012 WL 2422451, at *6–7 (E.D. Pa. June 27, 2012) (same).

*also* Reply at 2–3 (arguing same). But as *Hertz* makes clear, the nerve center analysis is not case-specific: A corporation has one nerve center for *all cases*. *Hertz*, 559 U.S. at 93; *see also Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 104 (4th Cir. 2011) (under *Hertz*, "the corporation's 'nerve center,' is, in *all cases*, the principal place of business") (emphasis added).

Ms. Gentry appears to confuse the *Hertz* nerve center test with the Supreme Court's analysis for specific personal jurisdiction, which is "'case-linked.'" *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The two analyses are separate and unrelated, and this error proves fatal to Ms. Gentry's assessment and purported use of the defendants' citizenship. *See, e.g., Estrada v. Gate Gourmet, Inc.*, No. 17-1100, 2017 WL 2468773, at *2 (C.D. Cal. June 6, 2017) ("The Court agrees with Defendant that Plaintiff seems to be confusing the test for 'minimum contacts' to establish personal jurisdiction over a defendant, with the test from *Hertz Corp. v. Friend* for establishing the citizenship of the parties for purposes of diversity jurisdiction. A corporation may have only one principal place of business for purposes of this test, the so-called 'nerve center' or 'brain' of the company. This is the company's 'place of actual direction, control, and coordination.'") (citations omitted).

Applying the *Hertz* nerve center test, the Court addresses each defendant's citizenship in turn. The defendants are grouped in two categories: (1) nominal parties and (2) real and substantial parties.

11

## A. Nominal Parties

Nominal parties have "no actual interest in the outcome of the litigation[.]" *Johnson,* 724 F.3d at 359; *see also Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991) ("Nominal parties are generally those without a real interest in the litigation.") (citation omitted). They "tend to be formal parties without any stake in the outcome of the litigation, such as a now-extinct corporation that has been entirely dissolved into another, surviving corporation." *Bancorp, Inc. v. Yaron,* No. 14-7159, 2015 WL 4876330, at *2 (E.D. Pa. Aug. 14, 2015). The complaint names four nominal parties as defendants.

### 1. "Keystone Helicopter Corporation" and "Keystone Helicopter Corporation (n/k/a Sikorsky Global Helicopters, Inc.)"

Keystone Helicopter Corporation is a "now-extinct corporation," making it a quintessential nominal party. *Id.* According to the declaration of Jerry Meshell, Tax Counsel for Sikorsky Aircraft Corporation, after incorporating in Pennsylvania in 1961, Keystone Helicopters Corporation was renamed Sikorsky Global Helicopters, Inc. in 2011, which then merged into the Connecticut corporation Helicopter Support, Inc. in 2015. *See* March 27, 2018 Meshell Decl. at ¶¶ 5–7; *see also* March 27, 2018 Meshell Decl., Ex. 1 (Articles of Amendment – Domestic Corporation) (showing that Keystone Helicopters Corporation was renamed "Sikorsky Global Helicopters, Inc."); March 27, 2018 Meshell Decl., Ex. 2 (Articles/Certificate of Merger) (showing merger of Sikorsky Global Helicopters, Inc. into Helicopter Support, Inc.); Motion to Remand, Ex. E (Sikorsky Global Helicopters, Inc. Business Entity Details Print Screen) (showing Sikorsky Global Helicopters, Inc.'s status as "merged"); Supp. in Support of Mot. to Remand, Ex. B (Meshell Depo. Tr.) at pp. 17–18, 31–32 (describing merger).[11]

---

[11]      The transcript of Mr. Meshell's deposition is attached as Exhibit B to Ms. Gentry's Supplement in Support re Motion to Remand. *See* Supp. in Support of Mot. to Remand, Ex. B.

After the merger, Helicopter Support, Inc. "stepped into [Sikorsky Global Helicopters Inc.'s] shoes." *SmithKline Beecham Corp.*, 724 F.3d at 359; *see also* March 27, 2018 Meshell Decl., Ex. 2 (Articles/Certificate of Merger) (stating that only Helicopter Support, Inc. survived the merger); Conn. Gen. Stat. Ann. § 34-616 (listing the effects of merger agreements under Connecticut law).[12] Keystone Helicopters Corporation changed its name, merged into Helicopter Support, Inc., and has no continued existence, making it a nominal party in this litigation. *See SmithKline Beecham Corp.*, 724 F.3d at 359 (Because a pre-merger company's "'debts, liabilities and duties' now lie with [the surviving entity]," the pre-merger company "has no actual interest in the outcome of the litigation, making it a 'nominal party.'") (citations omitted). As a result, Helicopter Support, Inc., and not Keystone Helicopters Corporation, has a real and substantial interest in this litigation. Although Keystone Helicopters Corporation "may technically still be a Pennsylvania citizen, we must disregard its citizenship for purposes of establishing diversity jurisdiction" and for all other removal-related purposes. *Id.*; *see also id.* at 359 n.27.[13]

---

Citations are based on the pagination indicated in the top right-hand corner of each page of the deposition.

[12]     "When a merger becomes effective:

- (1) The surviving entity shall continue to exist or come into existence;
- (2) Each merging entity that is not the surviving entity shall cease to exist;
- (3) All property of each merging entity shall vest in the surviving entity without assignment, reversion or impairment;
- (4) All liabilities of each merging entity shall be liabilities of the surviving entity;
- (5) Except as otherwise provided by law, other than as provided in this chapter or the plan of merger, all of the rights, privileges, immunities, powers and purposes of each merging entity shall vest in the surviving entity[.]"

Conn. Gen. Stat. Ann. § 34-616.

[13]     To the extent the complaint names as a defendant the entity "Keystone Helicopter Corporation (n/k/a Sikorsky Global Helicopters, Inc.)", the analysis for that entity is the same as for Keystone Helicopter Corporation. *See supra* n.3.

13

## 2. "Sikorsky Global Helicopters, Inc."

Sikorsky Global Helicopters, Inc., like Keystone Helicopters Corporation, is a nominal party. For the purposes of this litigation, Sikorsky Global Helicopters, Inc. has existed in two separate iterations, neither of which makes it a real and substantial party. First, the **corporation** Sikorsky Global Helicopters, Inc. (originally named Keystone Helicopter Corporation) merged into Helicopter Support, Inc. Second, since the merger leaving Helicopter Support, Inc. as the surviving company, Helicopter Support, Inc. registered the **fictitious name** "Sikorsky Global Helicopters, Inc.," under the Pennsylvania Fictitious Names Act, 54 Pa.C.S.A § 301. Because Sikorsky Global Helicopters, Inc. exists today only as a fictitious name, it is a nominal party with no interest in the outcome of this litigation.

First, the now defunct **corporation** Sikorsky Global Helicopters, Inc., after its merger into Helicopter Support, Inc., no longer exists. March 27, 2018 Meshell Decl. at ¶ 9; *see supra* at pp. 12–13. The corporation Sikorsky Global Helicopters, Inc., like Keystone Helicopter Corporation, is therefore a nominal party and its citizenship has no bearing on the Court's analysis.

Second, Sikorsky Global Helicopters, Inc. also has a continued existence as a fictitious name. After Sikorsky Global Helicopters, Inc. merged into Helicopter Support, Inc., Helicopter Support Inc. registered the **fictitious name** "Sikorsky Global Helicopters, Inc." for use in Pennsylvania. *See* March 27, 2018 Meshell Decl. at ¶ 10; *see also* March 27, 2018 Meshell Decl., Ex. 3 (Application for Registration of Fictitious Name). Ms. Gentry's complaint also appears to acknowledge that "Sikorsky Global Helicopters, Inc." is a "fictitious name" for Helicopter Support, Inc. *See* Compl. ¶ 9.[14]

---

[14]  "Defendant, Sikorsky Global Helicopters, Inc. is either a fictitious name or a separate legal entity organized and existing under the laws of the Commonwealth of Pennsylvania, which name is the operational moniker for Sikorsky and Keystone Helicopter operations . . . ." Compl. ¶ 9.

14

Helicopter Support, Inc.'s registration of the fictitious name "Sikorsky Global Helicopters, Inc." does not make the fictitious name a real and substantial party. It is of no moment that the "Application for Registration of Fictitious Name" requests that the registrant, i.e., the fictitious name entity, identify its "address, including number and street, if any, of the principal place of business." March 27, 2018 Meshell Decl., Ex. 3 (Application for Registration of Fictitious Name). Under Pennsylvania law, "[t]he use of a fictitious name does not create a separate legal entity, but is merely descriptive of a person or corporation who does business under another name. The business name is a fiction, and so too is any suggestion the business is a legal entity separate from its owner." *Burlington Coat Factory of Pa., LLC v. Grace Const. Mgmt. Co., LLC*, 126 A.3d 1010, 1024 (Pa. Super. 2015) (citations omitted)). In *Burlington Coat Factory*, the Superior Court of Pennsylvania held that a fictitiously named entity was not "a separate entity" distinguishable from the plaintiffs who registered the fictitious name. *Id.* at 1025; *see also Parks v. Woodbridge Golf Club, Inc.*, No. 11-0562, 2016 WL 8716606, at \*5 (E.D. Pa. July 22, 2016) (Defendants "did not create a separate entity by merely registering a fictitious name.").

Applying the same principle here, the fictitious name "Sikorsky Global Helicopters, Inc." is not a "separate legal entity," but "is merely descriptive of a . . . corporation who does business under another name," i.e., Helicopter Support, Inc. *Burlington Coat Factory*, 126 A.3d at 1024. Sikorsky Global Helicopters, Inc. has no stand-alone existence and no "stake in the outcome of th[is] litigation" (or any litigation), thus making it a nominal party. *Bancorp, Inc.*, 2015 WL 4876330, at \*2; *see also Smith v. Agresta,* No. 04-5266, 2005 WL 950603, at \*1 (E.D. Pa. Apr. 21, 2005) (rejecting motion to dismiss based on citizenship of fictitiously named defendant because it "confuse[d] the determination of a corporation's citizenship with that of a registered fictitious name"); *Frey v. Grumbine's RV*, No. 10-1457, 2010 WL 3703803, at \*3 (M.D. Pa. Sept.

15

15, 2010) ("[T]he presence of [a fictitious name for an entity] as a named defendant does not defeat the court's diversity jurisdiction. It appears, both from the papers submitted by Plaintiff and the affidavit from Defendants, that [the fictitious name for the entity] is not a separate business entity[.]"); *cf.* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). The real and substantial party, for the purposes of this litigation, is Helicopter Support, Inc., and not its fictitious name, "Sikorsky Global Helicopters, Inc."[15]

### 3. "Keystone Helicopter Holdings, Inc., A Lockheed Martin Company"

"Keystone Helicopter Holdings, Inc., A Lockheed Martin Company" is a fictitious name for Keystone Helicopter Holdings, Inc. *See* Mot. to Remand, Ex. F (Keystone Helicopter Holdings, Inc., A Lockheed Martin Company Business Entity Details Print Screen and Registration of Fictitious Name). As discussed above, fictitious name entities are nominal parties. *See supra* at pp. 14–16. Rather, the real and substantial party is Keystone Helicopter Holdings, Inc., which registered the fictitious name.

### B. Real and Substantial Parties

Unlike nominal parties, real and substantial parties have a "'real interest in the litigation.'" *Johnson*, 724 F.3d at 358 (quoting *Bumberger*, 952 F.2d at 767). Here, there are at most three real

---

[15]     In the context of fictitiously named John Doe defendants, the Third Circuit Court of Appeals has commented that "fictitiously named defendants are not *necessarily* 'nominal' parties." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 30 n.3 (3d Cir. 1985) (emphasis added) (citing *Grosso v. Butte Electric Railway Co.*, 217 Fed. 422, 423 (D. Mont. 1914)). But unlike a John Doe defendant whose name is unknown but whose "relation to the controversy involved" is undisputed (or at least adequately alleged in the complaint), *id.*, here the fictitiously named entities have no legal existence whatsoever (and therefore no possible relation to the controversy). As a result, though there may be some circumstances in which a fictitiously named defendant is more than a nominal party, such is not the case here.

and substantial defendants, which, unlike the nominal defendants, arguably have real interests in this litigation.

### 1. "Sikorsky Aircraft Corporation"

The defendants concede that Sikorsky Aircraft Corporation is "properly named." Opp. to Mot. to Remand at 3. The only question, therefore, is Sikorsky Aircraft Corporation's places of citizenship.

The complaint alleges, without support, that Sikorsky Aircraft Corporation is incorporated in Connecticut. Compl. ¶ 4. The defendants refute this, and submitted affidavits and evidence showing that Sikorsky Aircraft Corporation is incorporated in Delaware. *See, e.g.*, March 27, 2018 Meshell Decl. at ¶ 4; May 11, 2018 Meshell Decl. at ¶ 4. Ms. Gentry does not offer any evidence that Sikorsky Aircraft Corporation is incorporated elsewhere—to the contrary, one of Ms. Gentry's exhibits identifies Sikorsky Aircraft Corporation's state of incorporation as Delaware. *See* Mot. to Remand, Ex. B (Application for Certificate of Authority of Foreign Business Corporation). The Court determines that one of Sikorsky Aircraft Corporation's two places of citizenship is Delaware.[16]

The complaint also alleges that Sikorsky Aircraft Corporation has its principal place of business in Pennsylvania. Compl. ¶ 4. The defendants respond that although Sikorsky Aircraft Corporation maintains at least one *facility* in Pennsylvania, its principal place of business and nerve center is in Connecticut. In her Motion for Remand, Ms. Gentry's focus is not on the place of control for Sikorsky Aircraft Corporation, but instead on "direction, control, and coordination of

---

[16]     The Court takes judicial notice of the fact that a public record search of the Delaware Department of State's website, https://icis.corp.delaware.gov/Ecorp/EntitySearch/ NameSearch.aspx, reflects that Sikorsky Aircraft Corporation is incorporated in Delaware. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 496 (E.D. Pa. 2018) ("[D]ocuments qualifying as public records may be judicially noticed by courts.").

17

the Sikorsky defendants' activities *with respect to the accident model helicopter*." Mot. to Remand at p. 14 (emphasis added).

As previously discussed, a corporation has only one nerve center. *See Hertz*, 559 U.S. at 93 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."). A nerve center is "more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat;" it is a company's "place of actual direction, control, and coordination[.]" *Id.* at 97. The defendants' submissions show that "Sikorsky Aircraft Corporation's Stratford, Connecticut corporate headquarters is the place where the officers and directors control and coordinate the corporation's activities. . . . [T]he Senior Management and their staff responsible for Sikorsky business operations are located in Connecticut." May 11, 2018 Meshell Decl. at ¶ 7. "These corporate officers located in Connecticut have the responsibility to direct and develop plans, strategies, budgets and goals, and to oversee significant corporate decisions, and set corporate policy." *Id.* at ¶ 9; *see also id.* at ¶¶ 6, 8, 10–11, 13 (showing corporate activities taking place at Connecticut headquarters).

The parties also conducted jurisdictional discovery to supplement the analysis of Sikorsky Aircraft Corporation's nerve center. Ms. Gentry deposed Mr. Meshell (testifying on behalf of Sikorsky Aircraft Corporation), and he further confirmed that Sikorsky Aircraft Corporation's nerve center is in Connecticut.[17] For example, Mr. Meshell testified in his deposition that (1)

---

[17] In her supplemental brief on jurisdictional discovery, Ms. Gentry argues that (1) Mr. Meshell's deposition indicated he lacked personal knowledge or lied about relevant topics, and (2) counsel for the defendants improperly instructed Mr. Meshell not to answer relevant questions. As a result of these purported infirmities, Ms. Gentry appears to assert—without relevant case citations or support—that remand is a proper *sanction*. The Court has reviewed the full record, including Mr. Meshell's deposition testimony, and rejects Ms. Gentry's assertions. Mr. Meshell's testimony properly complied with the Court's Order on jurisdictional discovery, and the Court has an adequate record from which to decide the Motion to Remand.

Sikorsky Aircraft Corporation's corporate headquarters is in Connecticut and that its board of directors meets in Connecticut, Supp. in Support of Mot. to Remand, Ex. B (Meshell Depo. Tr.) at pp. 73–74, 110–111, (2) he was not aware of any authority being delegated from Sikorsky Aircraft Corporation's corporate headquarters to its Pennsylvania facility, *id.* at pp. 40–41, and (3) the airworthiness, warranty, sales, products support, engineering, design, and several other relevant corporate departments of Sikorsky Aircraft Corporation are located in Connecticut. *Id.* at pp. 37, 42, 76, 85–88, 90, 93–94, 106–111.

Based on the evidence and the testimony of Sikorsky Aircraft Corporation's corporate representative, Sikorsky Aircraft Corporation's "main headquarters" is in Connecticut. *Hertz*, 559 U.S. at 93. As such, Sikorsky Aircraft Corporation is a citizen of (1) Delaware, its state of incorporation, and (2) Connecticut, its principal place of business.

### 2. "Keystone Helicopter Holdings, Inc."

In the complaint, Ms. Gentry alleges that Keystone Helicopter Holdings, Inc. is "organized and existing under the laws of the Commonwealth of Pennsylvania." Compl. ¶ 8. Ms. Gentry is wrong.

First, Ms. Gentry's own evidence undermines her assertion that Keystone Helicopter Holdings, Inc. is incorporated in Pennsylvania. Ms. Gentry submits several Pennsylvania Department of State forms and screenshots of business search results from the Pennsylvania Department of State's online records. *See* Mot. to Remand, Ex. G (Keystone Helicopter Holdings, Inc. documents). All of these documents reflect that Keystone Helicopter Holdings, Inc. has filed a "foreign registration statement" in Pennsylvania, meaning that Keystone Helicopter Holdings,

19

Inc. is *not* incorporated in Pennsylvania but *is* permitted to do business there.[18] Indeed, one of the exhibits submitted by Ms. Gentry—Keystone Helicopter Holdings, Inc.'s 2005 "Application for Amended Certificate of Authority Foreign Corporation"—states that Keystone Helicopter Holdings, Inc. is incorporated in Delaware. Mot. to Remand, Ex. G (Keystone Helicopter Holdings, Inc. documents, specifically the "Application for Amended Certificate of Authority Foreign Corporation"). The defendants' submissions, including the declaration of Mr. Meshell, confirm that Keystone Helicopter Holdings, Inc. is incorporated in Delaware. *See* March 27, 2018 Meshell Decl. at ¶ 11. Consequently, one of the places of citizenship for Keystone Helicopter Holdings, Inc. is Delaware.[19]

Second, applying the *Hertz* nerve center test, Keystone Helicopter Holdings, Inc. has its principal place of business in Connecticut.[20] According to the defendants' evidence, "[t]he decisions regarding the business of Keystone Helicopter Holdings, Inc. are made in Connecticut." *Id.* at ¶ 12; *see also id.* at ¶ 11 ("Keystone Helicopter Holdings, Inc. is incorporated under the laws of the State of Delaware with its principal place of business in Connecticut."). Although the record does not contain other evidence about the day-to-day managerial operations of Keystone Helicopter Holdings, Inc., Mr. Meshell's unrefuted declaration is sufficient to establish that the

---

[18]     *See also* 15 Pa.C.S.A. § 102 (defining a "domestic association" as an "association, the internal affairs of which are governed by the laws of this Commonwealth" and defining a "foreign association" as an "association that is not a domestic association").

[19]     The Court also takes judicial notice of the fact that a public record search of the Delaware Department of State's website, https://icis.corp.delaware.gov/Ecorp/EntitySearch/ NameSearch.aspx, reveals that Keystone Helicopter Holdings, Inc. is incorporated in Delaware. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d at 496.

[20]     To the extent that Ms. Gentry argues that Keystone Helicopter Holdings, Inc.'s principal place of business is in Pennsylvania because that is where decisions were made "for the support and production of the accident model helicopter," *see* Reply at 2, the Court incorporates the foregoing analysis distinguishing the *Hertz* citizenship analysis from the Supreme Court's case-linked specific jurisdiction analysis. *See supra* at pp. 10–11.

corporation's activities are "direct[ed], control[led], and coordinate[d]" in Connecticut. *Hertz*, 559 U.S. at 80; *see also Johnson v. SmithKline Beecham Corp.*, 853 F. Supp. 2d 487, 495 (E.D. Pa. 2012), *aff'd*, 724 F.3d 337 (3d Cir. 2013) (Under *Hertz*, a company's nerve center "is where its ownership decisions are made[.]").[21]

Based on the Court's consideration of the evidence, Keystone Helicopter Holdings, Inc. is a citizen of (1) Delaware, its state of incorporation, and (2) Connecticut, its principal place of business.

### 3. "Helicopter Support, Inc."

Although the complaint does not explicitly name Helicopter Support, Inc. as a defendant, Ms. Gentry seemingly attempts to bring claims against Helicopter Support, Inc. by naming its predecessor entities and the fictitious name "Sikorsky Global Helicopters, Inc.," which was registered by Helicopter Support, Inc. *See supra* at pp. 12–16; *see also* Notice of Removal ¶¶ 10, 26 ("Helicopter Support, Inc., improperly named as 'Sikorsky Global Helicopters Inc.,' 'Keystone Helicopter Corporation', and/or 'Keystone Helicopter Corporation (n/k/a Sikorsky Global Helicopters, Inc.)' is a Connecticut corporation with its principal place of business in Connecticut."). Aware that Ms. Gentry may have intended or intend to pursue claims against Helicopter Support, Inc., the Court will assess the citizenship of Helicopter Support, Inc.[22]

---

[21] The "Registration of Fictitious Name" form filed by Keystone Helicopter Holdings, Inc. to register the fictious name "Keystone Helicopter Holdings, Inc., A Lockheed Martin Company" suggests that Keystone Helicopter Holdings, Inc. may maintain a Pennsylvania office address. *See* Motion to Remand, Ex. F at p. 4 (Keystone Helicopter Holdings, Inc., A Lockheed Martin Company documents). But the form does not state what sort of operations occur at that office and is not sufficient to call into question Mr. Meshell's declaration that "[t]he decisions regarding the business of Keystone Helicopter Holdings, Inc. are made in Connecticut." March 27, 2018 Meshell Decl. at ¶ 12.

[22] At this juncture, the Court expresses no opinion on whether Helicopter Support, Inc. was properly served or is otherwise a proper party to this action.

The record shows that Helicopter Support, Inc. is incorporated in Connecticut and its nerve center is in Connecticut. In addition to Mr. Meshell's declaration that Helicopter Support, Inc. "is incorporated under the laws of Connecticut and maintains its principal place of business in Connecticut," March 27, 2018 Meshell Decl. at ¶ 8,[23] Mr. Meshell's deposition testimony confirms that the corporation's "place of actual direction, control, and coordination" is Connecticut. *See Hertz*, 559 U.S. at 97. Mr. Meshell testified that "[t]he management, the Helicopter Support, Inc. management is Connecticut, they oversee it, they meet with the customers, all that is done in Connecticut." Supp. in Support of Mot. to Remand, Ex. B (Meshell Depo. Tr.) at p. 82. He added that Helicopter Support, Inc.'s employees in charge of helicopter operations are "based in Connecticut," *id.* at pp. 83–84, and that the corporation's customer call center is in Connecticut. *Id.* at p. 88. On the other hand, there is nothing in the record showing that Helicopter Support, Inc.'s state of incorporation or nerve center are anywhere other than Connecticut. Therefore, Helicopter Support, Inc. is a citizen of Connecticut, where it is both incorporated and keeps its principal place of business.

## III. Whether the Court Has Subject Matter Jurisdiction[24]

The principal federal statute governing diversity subject matter jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions between citizens of different States where the amount in controversy exceeds $75,000. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (citations, quotations, and alterations omitted). Since 1806, the Supreme

---

[23] The Court takes judicial notice of the fact that a public record search of the Connecticut Secretary of State's website, https://www.concord-sots.ct.gov/CONCORD/online?sn=PublicInquiry&eid=9740, reveals that Helicopter Support, Inc. is incorporated in Connecticut. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d at 496.

[24] Because the Court determines that it has diversity jurisdiction, it need not decide whether Ms. Gentry's claims necessarily raise a federal issue under *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005).

22

Court "ha[s] read the statutory formulation between citizens of different States to require complete diversity between all plaintiffs and all defendants." *Id.* (citations, quotations, and alterations omitted).

In addition to enunciating the diversity requirement, § 1332 describes the ways in which courts determine the residency of the parties, including that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Courts apply the Supreme Court's analysis in *Hertz* to ascertain a party's principal place of business, but, in so doing, the citizenship of nominal parties does not factor into a court's calculation. *See, generally, Johnson*, 724 F.3d at 347–59.

Here, there is complete diversity between the plaintiff, Ms. Gentry, and the defendants who are actual parties in interest (rather than nominal parties).[25] Ms. Gentry is a citizen of Tennessee and none of the real and substantial defendants are citizens of Tennessee. Each non-nominal defendant's citizenship is as follows:

| **Real Party in Interest** | **Citizenship** |
|---|---|
| **Sikorsky Aircraft Corporation** | Delaware and Connecticut |
| **Keystone Helicopter Holdings, Inc.** | Delaware and Connecticut |
| **Helicopter Support, Inc.** | Connecticut[26] |

[25]    The Court excludes from this analysis Keystone Helicopter Corporation, Sikorsky Global Helicopters, Inc., and Keystone Helicopter Holdings, Inc. A Lockheed Martin Company. As noted above, each of these entities are nominal parties insofar as they no longer exist and/or are fictitious names only. *See supra* at pp. 12–16.

[26]    As discussed above, the complaint does not name Helicopter Support, Inc. as a defendant. Nonetheless, for the purposes of this Motion, the Court assumes (without deciding) that Ms. Gentry intended or intends to pursue claims against Helicopter Support, Inc.

23

Because (1) there is diversity between Ms. Gentry and the real and substantial defendants,[27] and (2) the amount in controversy exceeds \$75,000, the Court has diversity subject matter jurisdiction.

## IV. Whether Removal Was Proper

### A. Legal Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Once a case is removed from state court to federal court, however, it "may be remanded under [28 U.S.C. § 1447(c)] for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993); *see also Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1215 (3d Cir. 1991) ("Section 1447(c), then, tells us that *either* defective removal procedure *or* lack of subject matter jurisdiction is *a* proper ground for remand.") (emphasis in original). "It is settled that the removal statutes . . . are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth*, 809 F.2d at 1010.

Aside from limiting removal to cases over which federal courts have subject matter jurisdiction, federal law identifies several specific procedures with which removing defendants must comply. First, the "unanimity rule" states that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent

---

[27]    "No rule exists—and Plaintiff has not cited any supporting authority for the proposition— that every defendant must be diverse from all other defendants." *Filsaime v. Caruso*, No. 14-6506, 2015 WL 171844, at \*2 (E.D. Pa. Jan. 13, 2015); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74 (1978) ("[D]iversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff.") (emphasis in original).

to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). And second, under the "forum defendant rule," removal is proper "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

## B. The Unanimity Rule

The Third Circuit Court of Appeals has recognized that consent to removal is not required where the "non-joining defendant is an unknown or nominal party." *Balazik*, 44 F.3d at 213 n.4 (citations omitted); *see also Johnson*, 724 F.3d at 359, n.27 (Nominal defendant's "apparent failure to consent to removal also does not provide a basis for remand."); *N. Penn Water Auth. v. Bae Sys. Aerospace Elecs., Inc.*, No. 04-5030, 2005 WL 1279091, at \*6 (E.D. Pa. May 25, 2005) (Defendant "is a nominal defendant and therefore it was unnecessary for [it] to join in the Notice of Removal.").

Here, there are at most three the real and substantial defendants—Sikorsky Aircraft Corporation, Keystone Helicopter Holdings, Inc., and Helicopter Support, Inc.—all of which consented to removal. *See* Notice of Removal at pp. 1, 7. Ms. Gentry argues that removal is improper because Keystone Helicopter Holdings, Inc., A Lockheed Martin Company apparently did not join the Notice of Removal (and did not join in the consent to removal expressed therein). But because "Keystone Helicopter Holdings, Inc., A Lockheed Martin Company" is merely a fictitious name for Keystone Helicopter Holdings, Inc., *see supra* at p. 16, the nominal defendant did not need to consent. *Balazik*, 44 F.3d at 213 n.4. All of the real and substantial parties consented to removal, and so the defendants satisfied the unanimity rule.

## C. The Forum Defendant Rule

The forum defendant rule only applies, on its face, to "parties in interest properly joined." § 1441(b)(2). Here, no real and substantial party is a citizen of Pennsylvania: both Sikorsky

Aircraft Corporation and Keystone Helicopter Holdings, Inc. are citizens of Delaware and Connecticut and Helicopter Support, Inc. is a citizen of only Connecticut. The citizenship of nominal parties does not violate or affect the forum defendant rule. *See Mallalieu-Golder Ins. Agency, Inc. v. Exec. Risk Indem., Inc.*, 254 F. Supp. 2d 521, 526 (M.D. Pa. 2003) ("[A] nominal party to an action . . . cannot be a party in interest under 28 U.S.C. § 1441(b).") *Yakitori Boy, Inc. v. Starr Indem. & Liab., Co.*, No. 18-4094, 2019 WL 199904, at *5 (E.D. Pa. Jan. 14, 2019) (holding that defendant "is a nominal party and his citizenship status should not affect this Court's exercise of diversity jurisdiction, nor should it affect removal under 28 U.S.C. § 1441(b)"); *cf.* § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). The defendants complied with § 1441(b) and the forum defendant rule.

The defendants obeyed with the requirements for removal and as such removal was proper.[28]

## CONCLUSION

Just because a corporation maintains some limited operations in Pennsylvania, it does not follow that the company's principal place of business is also necessarily in Pennsylvania, even if the company is being sued for conduct arising from those Pennsylvania operations. Likewise, just because an entity registers a fictitious name for use in Pennsylvania, the fictitious name does not become subject to suit independent of the underlying entity. Therefore, the Court determines that there is diversity subject matter jurisdiction and removal was properly executed.

---

[28] Ms. Gentry's request for attorneys' fees under 28 U.S.C. § 1447(c) is also denied. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Because removal here was proper, it was also "objectively reasonable." *Id.*

26

Separately, Ms. Gentry's attempt to shoehorn the Fetbroyt Declaration into the record—for the second time—was improper.

For those and the foregoing reasons, Ms. Gentry's Motion to Remand is denied and the defendants' Motion to Strike is granted. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE